IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


MARTIN GALLEGOS,

        Petitioner,

v.                                                CIV 09-049 JCH/GBW

MIKE HEREDIA, Warden, and
GARY K. KING, Attorney General
for the State of New Mexico,

        Respondents.


## PROPOSED FINDINGS & RECOMMENDATION

      This matter is before the Court on Martin Gallegos' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Because Mr. Gallegos is challenging a reduction of his good-time credits, this Court will construe his petition as coming under 28 U.S.C. § 2241.  *See Aquiar v. Tafoya*, 95 F. App'x 931, 932 (10th Cir. 2004); *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).  Since he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008).  All of the issues can be resolved on the record before me, and, therefore, an evidentiary hearing is unnecessary.  *E.g., Schriro v. Landrigan*, 550 U.S.

465, 475 (2007); *Sandoval v. Ulibarri*, 548 F.3d 902, 915-16 (10th Cir. 2008).  For the reasons

discussed below, I recommend that Mr. Gallegos' petition be dismissed.

## STANDARD OF REVIEW

Under AEDPA standards, if a state court addresses a claim on the merits, a

federal court cannot grant an "application for a writ of habeas corpus" unless the State

decision was (1) "contrary to" or an "unreasonable application" of "clearly established"

Supreme Court precedent or (2) an "unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The

Supreme Court and Tenth Circuit have discussed these deferential AEDPA standards in

detail in many opinions, and I will not reiterate them here.[1]  These standards apply to

decisions on the merits regardless of whether the State opinion is conclusory.  *See e.g.*

*Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)

Furthermore, even if a federal habeas court finds that the State court decision

was "contrary to" or "unreasonable" and a violation of constitutional dimension,

habeas relief may not issue unless the violation is of a sort that warrants such relief.

*E.g., Terry Williams v. Taylor*, 529 U.S. 362, 375 (2000) ("It is, of course, well settled that

---

[1]  *E.g., Panetti v. Quarterman,* 551 U.S. 930, 953-54 (2007) (and cases cited therein);
*Fry v. Pliler,* 551 U.S. 112, 119-120 (2007) (same); *Wilson v. Sirmons,* 536 F.3d 1064, 1073-74
(10th Cir. 2008), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008);
*House v. Hatch,* 527 F.3d 1010, 1018-20 (10th Cir. 2008); *DeLozier,* 531 F.3d at 1319; *Johnson
v. Mullin,* 505 F.3d 1128, 1133-34 (10th Cir. 2007).

the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."); *Wilson v. Sirmons,* 536 F.3d 1064, 1073 (10th Cir. 2008) ("If we find that the state court erred, we still must determine whether the error is a structural defect 'in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards.'") (quoting *Arizona v. Fulminante,* 449 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008).  Finally, when a claim that is raised for the first time in federal habeas is "easily resolvable against the habeas petitioner," the court may deny the claim on the merits.  *E.g., Lambrix v. Singletary,* 520 U.S. 518, 525 (1997); 28 U.S.C. § 2254(b)(2).  Because I find the state court applied the correct precedent and its determination was reasonable, I recommend the petition be dismissed.

## BACKGROUND

On June 18th, 2008, Sergeant Carlos Saenz reported searching the cell assigned to Mr. Gallegos and finding a syringe in a fold of the brown paper bag being used as a trash bag.  *Doc. 13*, Exh. B.  Sgt. Saenz took photographs of the syringe and cell.  *Id*.  He subsequently filed an Inmate Misconduct Report.  *Id*.  In the body of that report, Sgt. Saenez wrote that he had searched "HU 2A cell D-114."  At the top of the report, however, in the space used to indicate the unit searched, the Sargent wrote "2B."  *Id*.  It

is undisputed that at the time of the incident, Petitioner resided in Housing Unit 2B, cell

D-114.

The next day, a Disciplinary Officer[2] initiated an investigation of the report,

ultimately recommended a Major Level Hearing, and advised Mr. Gallegos of his rights

and the date of his hearing.  *Doc. 13*, Exh. C.  Mr. Gallegos denied the allegations of the

Misconduct Report and made the following statement in his defense: "Canteen showed

up that day and everyone throws their bags, I got one of those bags and used it as a

trash bag, I went out to recreation and did not even know that they had found that in

my cell until they his [sic] me with the report."  *Id*.  At the hearing, Mr. Gallegos sought

and was granted the assistance of fellow inmate Frank Muniz.  Together, they argued

that the charge should be dismissed because the body of the report included the wrong

cell number.[3]  *Id*.  Mr. Gallegos was given the opportunity to call witnesses, but declined

to do so.  *Id*.  In the "Summary of Evidence and Procedings," Hearing Officer Jose

Armendariz or another prison staff member noted: "The wrong Housing Unit is on the

Body of the report but the correct one is at the top of the report.  This will be considered

---

[2]  The prison's administrative reports attached to Defendants' answer do not mention a name, but the petition states that the Investigating Officer was Ricardo Salayandia.  *Doc. 1* at 8.

[3]  They also asserted a violation of procedural due process, but that issue was decided against Mr. Gallegos by the Hearing Officer, and Petitioner has since abandoned the claim.  *See Doc. 13*, Exh. C.

a typographical error." *Id.*  On July 3, 2008 Hearing Officer Armendariz found Mr.

Gallegos guilty of possession of a syringe and recommended, among other things,

revocation of 270 days of earned good time credit.  *Id*.  In his Disciplinary Decision,

Hearing Officer Armendariz stated that his decision was based upon:

> 1.  STIU SGT Carlos Saenz's eyewitness/observation that on June 18, 2008
> at approximately 1:08 PM, while conducting a search of HU 2B, cell D-114
> assigned to Inmate Martin Gallegos #33744, discovered a syringe with an
> orange colored cap wrapped in white tissue paper and clear plastic in a
> paper bag being used as a trash container.
>
> 2.  Photocopies of the evidence and chain of custody.

*Id.*  The Hearing Officer also noted, "This is Inmate Gallegos' (4th) Major Misconduct

Report of this type." *Id.*

Mr. Gallegos appealed the decision of the Hearing Officer arguing that the

decision was not based on evidence, and on August 22, 2008, Warden Mike Heredia

denied the appeal because the disciplinary policy and sanctions complied with the New

Mexico Corrections Department Disciplinary Guidelines.  *Doc. 13*, Exh. D.  On October

8, 2008, Mr. Gallegos filed a writ of habeas corpus to the state of New Mexico, and on

November 3, 2008, that petition was dismissed.  *Doc. 13*, Exhs E & F.  Plaintiff petitioned

for certiorari, but on December 22, 2008 his petition was denied.  *Doc. 13*, Exhs G & H.

5

**DISCUSSION**

Petitioner makes five distinct arguments.  I have construed them liberally, arranged them topically, and categorize and analyze them under the proper legal theories based on the facts he asserts.  *See, e.g., Roman-Nose v. New Mexico Dept. of Human Servs.*, 967 F.2d 435, 437 (10th Cir. 1992) ("The characterization of the action and the claim for relief by a *pro se* litigant is not dispositive on the availability of relief in federal court."); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").  Because none of Petitioner's five arguments entitle him to habeas relief, this Court denies Mr. Gallegos' petition.

Due Process and the "Some Evidence" Standard

Petitioner first argues that he is entitled to habeas relief because in the body of the disciplinary report, Sgt. Saenz wrote that he had found the syringe in Housing Unit 2A, Cell D-114.  *Doc. 1* at 5.  At the time of the room search, however, Mr. Gallegos was housed in unit 2*B*, D-114.  *Id*.  Petitioner made this argument during the disciplinary hearing (*Doc. 13*, Exh. C), and again in his state habeas petition (*Doc. 13*, Exh. E).  The Hearing Officer noted that the correct housing number was indicated at the top of the report, and found that the "2A" language in the body of the report was merely a typographical error.  *Doc. 13*, Exh. C.  In dismissing the state habeas petition, the state

court recounted the above history and noted that Petitioner failed to raise "any facts that show that the discrepancy was not a typographical error." *Doc. 13*, Exh. F.  This Court finds that the state court's denial was reasonable because, despite the discrepancy in the disciplinary report, the disciplinary conviction was based on "some evidence."

New Mexico inmates possess a liberty interest in earned credits, *see Brooks v. Shanks*, 118 N.M. 716, 717 (N.M., 1994), and are entitled to due process protection prior to the loss of those credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (U.S. 1974). In addition to certain procedural requirements, discussed below, "some evidence" must support the conclusion of the administrative tribunal to satisfy the requirements of due process.  *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*  472 U.S. 445, 455 (U.S., 1985).  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id*. at 455-56.

In *Hill*, a prison guard found an inmate who, apparently, had just been assaulted. He also witnessed three other inmates running away from the scene.  Although there was no direct evidence identifying any one inmate as the assailant, the Supreme Court held that this evidence, "meager" though it may be, was sufficient to find each fleeing

7

inmate guilty of assault in the disciplinary tribunal without violating their due process rights. *Id.* at 456-57.

In the case at bar, the evidence indicating Petitioner's guilt is less meager. He does not deny that at the time of the search he was housed in Unit 2-B, Cell D-114, which is the location of the search indicated at the top of the disciplinary report. Although the body of that report indicates that the location of the search was in Unit 2A, cell D-114, it also goes on to say: "assigned to inmate Gallegos." Moreover, Sgt. Saenz must have testified that the unit he, in fact, did search was 2B because the Hearing Officer cited Sgt. Saenz's "eyewitness/observation" that the syringe was found in unit 2B when explaining what evidence led to his conclusion that Petitioner was guilty of the charge. *Doc. 13*, Exh. C. Clearly, Defendants met the "some evidence" standard put forward in *Hill*, and the state court reasonably applied that standard.

The Hearing Officer also cited "Photocopies of the evidence and chain of custody" as reasons for his decision. *Doc. 13*, Exh C. The photocopies included pictures of the syringe and the cell. *Doc. 13*, Exh. B. Petitioner argues that the evidence was insufficient because the picture of the cell taken by Sgt. Saenz, though it noted the cell number as D-114, did not indicate whether the cell was in unit 2A or 2B. *Doc. 1* at 10. For the reasons explained above, however, the tribunal would have met its burden of "some evidence" without reliance on any photograph. The fact that this photo is only

8

partially instructive, therefore, does not suggest constitutional error in the disciplinary

board's findings.

Petitioner next asserts that this Court should apply the heightened

preponderance of the evidence standard employed by the New Mexico Corrections

Department in disciplinary proceedings instead of the "some evidence" standard

espoused in *Superintendent*. *Doc. 1* at 6-7. Petitioner misunderstands the law. To begin,

the *Superintendent* Court made clear in its reasoning that Due Process does not require a

heightened standard:

> Prison disciplinary proceedings take place in a highly charged
> atmosphere, and prison administrators must often act swiftly on the basis
> of evidence that might be insufficient in less exigent circumstances. The
> fundamental fairness guaranteed by the Due Process Clause does not
> require courts to set aside decisions of prison administrators that have
> some basis in fact. Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence necessary to
> support such a conviction, nor any other standard greater than some
> evidence applies in this context.

*Superintendent*, 472 U.S. at 456 (internal citations omitted). Moreover, prison regulations

are "primarily designed to guide correctional officials in the administration of a prison. .

. . [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472,

481-82 (1995). Thus, "a failure to adhere to administrative regulations does not equate

to a constitutional violation." *Malik v. Kindt*, 1996 WL 41828, *2 (10th Cir. 1996) (quoting

*Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993)); *See also Harrison v. Williams*,

2009 WL 4016104, *4 (W.D.Okla. 2009).  "Although states may create liberty interests

protected by due process, 'these interests will be generally limited to freedom from

restraint which ... imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life.'"  *Godlock v. Fatkin* 84 F. App'x. 24, 30 (10th Cir.

2003)(quoting *Sandin*, 515 U.S. at 484).  As in *Godlock*, "[t]his case does not present a

situation where 'a prison regulation or practice offends a fundamental constitutional

guarantee.'"  *Godlock*, 84 F. App'x at 30 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Thus, the appropriate standard is the "some evidence" standard set out in

*Superintendent*, and for the reasons above explained, I find the state court correctly

applied that standard and came to a reasonable determination of the facts.

Procedural Due Process Requirements for Revocation of Good Time Credits

      Next, Petitioner asserts that the process given him before the revocation of his

good time credits was insufficient.  Specifically, he claims that a New Mexico

Corrections Department regulation required any typos in the disciplinary report to be

fixed during the investigatory stage prior to the hearing, and that the prison's failure to

fix any typos at that time effectively waived the right of the Hearing Officer to consider

any discrepancies as typographical errors.  *Doc. 1* at 8-9.  This Court finds Petitioner's

interpretation of the regulation exceptionally unlikely, but even assuming that it is

correct, it is not the type of deprivation afforded constitutional protection.

As stated above, prison regulations are "primarily designed to guide correctional officials in the administration of a prison. . . . [They are] not designed to confer rights on inmates." *Sandin,* 515 U.S. at 481-82; *see also Harrison*, 2009 WL 4016104 at* 4.  Moreover, the Tenth Circuit has held as follows:

> It is well settled "that an inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.' " *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir.1991) (quoting *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)). The Supreme Court has held, however, that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). To meet the standards of due process in a disciplinary proceeding under *Wolff*, "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

*Mitchell v. Maynard*, 80 F.3d 1433, 1444-45 (10th Cir. 1996).  Even where petitioners assert other procedural violations, this Court's review "is limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary Committee's findings." *Id.* at 1445.  I have already found that some evidence supported the Hearing Officer's findings and will now address the *Wolff* requirements.

Petitioner does not assert that any of his procedural rights under *Wolff* were

violated, and the exhibits attached to Defendants' answer show that they were not.  Mr. Gallegos was given advanced written notice of the disciplinary charges.  *Doc. 13*, Exh. C. He was asked both during the investigation and at the hearing if he wanted to call any witnesses.  *Id*.  He declined.  *Id*.  Petitioner did not present documentary evidence at the hearing, but nothing in the record suggests he was disallowed from presenting such evidence.  *See Doc. 13*, Exh. C.  Petitioner was also offered an interpreter (which he declined), and his request to have inmate Frank Muniz assist him during the hearing was granted.  *Id*.  Finally, the Hearing Officer issued a decision that stated specific reasons for finding Petitioner guilty of the charge.  *Id*.  Thus, Petitioner was provided adequate process.

Petitioner next argues that the New Mexico legislature has vested in its inmates another procedural right that must be protected by the federal constitution.  *Doc. 1* at 13. N.M.S.A. 1978 §33-2-36 requires "final approval of the director of the adult institutions division of the corrections department or the director's designee" for any good time credit deductions greater than 90 days.  N.M.S.A. 1978 §33-2-36.  Petitioner claims that such final approval was never obtained, the state did not address his claim in its answer, and the exhibits attached to the state's answer do not show any such final approval.  Whether this piece of legislation could create a constitutional right to process above and beyond the standard set out in *Wolff*, however, is not an issue this Court to

needs to decide since Petitioner failed to include the argument in his state habeas

petition. *See Doc. 13*, Exh. E.

In order to assert this claim for relief, Petitioner must first have exhausted his

state-court remedies by presenting this claim to the New Mexico state courts. *See* 28

U.S.C. § 2254(b)(1); *see also Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002)

(exhaustion requirement applies whether action is brought under § 2241 or § 2254).  Mr.

Gallegos will have exhausted this claim if he "first fairly presented the substance of his

federal habeas claim to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir.

2002).  "Fair presentation requires more than presenting all the facts necessary to

support the federal claim to the state court." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th

Cir. 2006) (quotation omitted).  Mr. Gallegos, proceeding *pro se*, pursued a habeas

petition in state court, and unsuccessfully sought review of the trial court's decision

denying him habeas relief through a petition for a writ of certiorari to the New Mexico

Supreme Court.  Because he pursued that petition *pro se*, those pleadings will be

liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Even so, the court

"will not rewrite a petition to include claims that were never presented." *Parker v.*

*Champion*, 148 F.3d 1219, 1222 (10th Cir.1998).  In his state habeas petition, Mr. Gallegos

simply did not present the claim that the lack of the director's final approval pursuant

to N.M.S.A. 1978 §33-2-36 entitled him to habeas relief. *See O'Sullivan v. Boerckel*, 526

U.S. 838 (1999); *see also Smallwood* v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999)

("Although petitioner raised an ineffective assistance of counsel claim ..., he based it on

different reasons than those expressed in his habeas petition[, and therefore] failed to

exhaust his ineffective assistance of counsel claim[ ].").

Thus, this particular claim must be dismissed for failure to exhaust the remedies

available in state court.

The Right to be Heard

Finally, Petitioner argues that his Due Process rights were violated because he

did not have an impartial Hearing Officer.  *Doc. 1* at 11.  Mr. Gallegos claims that the

Hearing Officer, Jose Armendariz, was not impartial because three days before

Petitioner's hearing on the charge of syringe possession, Petitioner had another hearing

in front of the same Hearing Officer on the charge of "Conspiracy to Introduce

Contraband into a Prison."  *Doc. 1* at 12.  Petitioner asserts that, just prior to the start of

the earlier hearing, the Hearing Officer was given a copy of the misconduct report for

the syringe possession charge that was to be heard three days later.  *Id*.  After looking

through the report, the Hearing Officer allegedly said to Petitioner, in Spanish, "with

this one they screwed you."  *Id*.[4]  Petitioner asserts that this statement indicates the

---

[4] Petitioner alleges the Hearing Officer said, "Con este si te chingaron."  *Doc. 1* at
12.

14

Hearing Officer had already decided the issue of the syringe petition before the time of

the hearing, rendering him a biased fact-finder.  *Id.*

      "An impartial decisionmaker is a fundamental requirement of due process that is

'fully applicable' in the prison context."  *Gwinn v. Awmiller*  354 F.3d 1211, 1220  (10th

Cir. 2004) (quoting *Wolff*, 418 U.S. at 592 (Marshall, J., concurring)).  Due Process will be

satisfied "as long as no member of the disciplinary board has been involved in the

investigation or prosecution of the particular case, or has had any other form of

personal involvement with the case."  *Wolff*, 418 U.S. at 592 (Marshall, J., concurring).

Furthermore,

> "because honesty and integrity are presumed on the part of a tribunal,
> there must be some substantial countervailing reason to conclude that a
> decisionmaker is actually biased with respect to factual issues being
> adjudicated." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th
> Cir.1998) (internal quotation marks omitted). " 'The mere exposure to
> evidence presented in nonadversary investigative procedures is
> insufficient in itself to impugn the fairness' of a later adversary hearing."
> *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir.1986) (quoting *Withrow v.
> Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Instead, "[d]ue
> process is violated only when 'the risk of unfairness is intolerably high'
> under the circumstances of a particular case." *Id.* (quoting *Withrow*, 421
> U.S. at 58, 95 S.Ct. 1456).

*Gwinn*, 354 F.3d at 1220.

      Petitioner does not assert that Hearing Officer Armendariz was a part of the

investigation or prosecution of his syringe possession charge.  In fact, he states in his

Petition that those in charge of the prosecution and investigation were prison staff other

than Hearing Officer Armendariz: the Reporting Officer was Sgt. Saenz and the

Investigating Officer was Ricardo Salayandia.  *Doc. 1* at 8, 12.  Likewise, Petitioner has

not alleged that the Hearing Officer had some personal stake in the outcome of the case

or was personally involved in the incident or subsequent charge.  Also, the Hearing

Officer's exposure to the disciplinary report "is insufficient in itself to impugn the

fairness of a later adversary hearing." *Gwinn*, 354 F.3d at 1220 (internal citation

omitted).

The remaining question is whether the Hearing Officer's statement to the

Petitioner after reviewing the report indicates an "intolerably high" risk of unfairness

and thus constitutes a "substantial countervailing reason to conclude that a decision-

maker is actually biased." *Id.*  I find that it does not.  The statement made by Hearing

Officer Armendariz -- "With this one they screwed you" -- does not clearly indicate he

had already decided the case before hearing the facts.  In fact, it could just as easily be

construed as skepticism of the legitimacy of the charge brought against Mr. Gallegos.

Perhaps Mr. Gallegos was banking on that latter interpretation, because, despite the fact

that he knew the Hearing Officer was the same man who three days prior had made

that comment, Petitioner did not protest Mr. Armendariz' deciding his case.  If he

believed he had a biased judge, Mr. Gallegos could have objected at the hearing or prior

to the hearing, or he could have explained in his petition(s) why he did not.  He did

16

none of the above, and this Court finds that Mr. Gallegos' behavior calls into doubt his

own belief in the partiality of the Hearing Officer.  The Hearing Officer is presumed to

decide his cases with honesty and integrity, and I decline to find that his comment

constituted an "intolerably high" risk of unfairness to Mr. Gallegos.  *Id.*

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Mr. Gallegos' petition be dismissed

with prejudice, except as to the argument he failed to include in his state habeas petition

(*see supra* pp. 12-14), which must be dismissed without prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____

UNITED STATES MAGISTRATE JUDGE