IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARTIN GALLEGOS,
         Petitioner,

v.                                       CIV 09-049 JCH/GBW

MIKE HEREDIA, Warden, and
GARY K. KING, Attorney General
for the State of New Mexico,

        Respondents.

## AMENDED PROPOSED FINDINGS & RECOMMENDATION

This matter is before the Court on Martin Gallegos' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Because Mr. Gallegos is challenging a reduction of his good-time credits, this Court will construe his petition as coming under 28 U.S.C. § 2241. *See Aquiar v. Tafoya*, 95 F. App'x 931, 932 (10th Cir. 2004); *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000). Since he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008). All of the issues can be resolved on the record before me, and, therefore, an evidentiary hearing is unnecessary. *E.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Sandoval v. Ulibarri*, 548 F.3d 902, 915-16 (10th Cir. 2008). For the reasons

discussed below, I recommend that Mr. Gallegos' petition be dismissed with prejudice.[1]

## STANDARD OF REVIEW

Under AEDPA standards, if a state court addresses a claim on the merits, a federal court cannot grant an "application for a writ of habeas corpus" unless the State decision was (1) "contrary to" or an "unreasonable application" of "clearly established" Supreme Court precedent or (2) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court and Tenth Circuit have discussed these deferential AEDPA standards in

---

[1] On January 7, 2010, the undersigned filed the original Proposed Findings and Recommendations. *Doc. 14.* In that filing, the undersigned found that, because one of Petitioner's claims had not been presented to the state court and was thus not exhausted, the unexhausted claim should be dismissed without prejudice and the remaining claims should be dismissed with prejudice. Such a recommendation, however, runs afoul of controlling guidance from the Tenth Circuit which has directed as follows: "When a district court is presented with a petition containing both exhausted and unexhausted claims, ... [the district court should] do one of 'four things: (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit." *Fairchild v. Workman*, 579 F.3d 1134, 1155 -1156 (10th Cir. 2009) (citations omitted). After reviewing these options, the undersigned concludes that option four is appropriate in this case because the unexhausted claim is "easily resolvable against the habeas petitioner." *See e.g., Lambrix v. Singletary,* 520 U.S. 518, 525 (1997). These amended proposed findings and recommendations mirror the original proposed findings and recommendations except for the analysis regarding the unexhausted claim. *See infra pp.* 13-16.

detail in many opinions, and I will not reiterate them here.[2]  These standards apply to

decisions on the merits regardless of whether the State opinion is conclusory.  *See e.g.*

*Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)

Furthermore, even if a federal habeas court finds that the State court decision

was "contrary to" or "unreasonable" and a violation of constitutional dimension,

habeas relief may not issue unless the violation is of a sort that warrants such relief.

*E.g., Terry Williams v. Taylor,* 529 U.S. 362, 375 (2000) ("It is, of course, well settled that

the fact that constitutional error occurred in the proceedings that led to a state-court

conviction may not alone be sufficient reason for concluding that a prisoner is entitled

to the remedy of habeas."); *Wilson v. Sirmons,* 536 F.3d 1064, 1073 (10th Cir. 2008) ("If we

find that the state court erred, we still must determine whether the error is a structural

defect 'in the constitution of the trial mechanism, which def[ies] analysis by

"harmless-error" standards.'") (quoting *Arizona v. Fulminante,* 449 U.S. 279, 309 (1991)),

*rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008).  Finally, when a

claim that is raised for the first time in federal habeas is "easily resolvable against the

habeas petitioner," the court may deny the claim on the merits.  *E.g., Lambrix v.*

---

[2]  *E.g., Panetti v. Quarterman,* 551 U.S. 930, 953-54 (2007) (and cases cited therein);
*Fry v. Pliler,* 551 U.S. 112, 119-120 (2007) (same); *Wilson v. Sirmons,* 536 F.3d 1064, 1073-74
(10th Cir. 2008), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008);
*House v. Hatch,* 527 F.3d 1010, 1018-20 (10th Cir. 2008); *DeLozier,* 531 F.3d at 1319; *Johnson
v. Mullin,* 505 F.3d 1128, 1133-34 (10th Cir. 2007).

*Singletary,* 520 U.S. 518, 525 (1997); 28 U.S.C. § 2254(b)(2).  Because I find the state court

applied the correct precedent and its determination was reasonable, I recommend the

petition be dismissed.

<u>**BACKGROUND**</u>

On June 18th, 2008, Sergeant Carlos Saenz reported searching the cell assigned to

Mr. Gallegos and finding a syringe in a fold of the brown paper bag being used as a

trash bag.  *Doc. 13*, Exh. B.  Sgt. Saenz took photographs of the syringe and cell.  *Id*.  He

subsequently filed an Inmate Misconduct Report.  *Id*.  In the body of that report, Sgt.

Saenez wrote that he had searched "HU 2A cell D-114."  At the top of the report,

however, in the space used to indicate the unit searched, the Sargent wrote "2B."  *Id*.  It

is undisputed that at the time of the incident, Petitioner resided in Housing Unit 2B, cell

D-114.

The next day, a Disciplinary Officer[3] initiated an investigation of the report,

ultimately recommended a Major Level Hearing, and advised Mr. Gallegos of his rights

and the date of his hearing.  *Doc. 13*, Exh. C.  Mr. Gallegos denied the allegations of the

Misconduct Report and made the following statement in his defense: "Canteen showed

up that day and everyone throws their bags, I got one of those bags and used it as a

---

[3] The prison's administrative reports attached to Defendants' answer do not
mention a name, but the petition states that the Investigating Officer was Ricardo
Salayandia.  *Doc. 1* at 8.

trash bag, I went out to recreation and did not even know that they had found that in my cell until they his [sic] me with the report." *Id*. At the hearing, Mr. Gallegos sought and was granted the assistance of fellow inmate Frank Muniz. Together, they argued that the charge should be dismissed because the body of the report included the wrong cell number.[4] *Id*. Mr. Gallegos was given the opportunity to call witnesses, but declined to do so. *Id*. In the "Summary of Evidence and Procedings," Hearing Officer Jose Armendariz or another prison staff member noted: "The wrong Housing Unit is on the Body of the report but the correct one is at the top of the report. This will be considered a typographical error." *Id*. On July 3, 2008 Hearing Officer Armendariz found Mr. Gallegos guilty of possession of a syringe and recommended, among other things, revocation of 270 days of earned good time credit. *Id*. In his Disciplinary Decision, Hearing Officer Armendariz stated that his decision was based upon:

> 1. STIU SGT Carlos Saenz's eyewitness/observation that on June 18, 2008 at approximately 1:08 PM, while conducting a search of HU 2B, cell D-114 assigned to Inmate Martin Gallegos #33744, discovered a syringe with an orange colored cap wrapped in white tissue paper and clear plastic in a paper bag being used as a trash container.
>
> 2. Photocopies of the evidence and chain of custody.

*Id*. The Hearing Officer also noted, "This is Inmate Gallegos' (4th) Major Misconduct

---

[4] They also asserted a violation of procedural due process, but that issue was decided against Mr. Gallegos by the Hearing Officer, and Petitioner has since abandoned the claim. *See Doc. 13*, Exh. C.

Report of this type." *Id.*

Mr. Gallegos appealed the decision of the Hearing Officer arguing that the decision was not based on evidence, and on August 22, 2008, Warden Mike Heredia denied the appeal because the disciplinary policy and sanctions complied with the New Mexico Corrections Department Disciplinary Guidelines. *Doc. 13*, Exh. D.  On October 8, 2008, Mr. Gallegos filed a writ of habeas corpus to the state of New Mexico, and on November 3, 2008, that petition was dismissed. *Doc. 13*, Exhs E & F.  Plaintiff petitioned for certiorari, but on December 22, 2008 his petition was denied. *Doc. 13*, Exhs G & H.

<u>**DISCUSSION**</u>

Petitioner makes five distinct arguments.  I have construed them liberally, arranged them topically, and categorize and analyze them under the proper legal theories based on the facts he asserts. *See, e.g., Roman-Nose v. New Mexico Dept. of Human Servs.*, 967 F.2d 435, 437 (10th Cir. 1992) ("The characterization of the action and the claim for relief by a *pro se* litigant is not dispositive on the availability of relief in federal court."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").  Because none of Petitioner's five arguments entitle him to habeas relief, this Court recommends denial of Mr. Gallegos' petition.

Due Process and the "Some Evidence" Standard

Petitioner first argues that he is entitled to habeas relief because in the body of the disciplinary report, Sgt. Saenz wrote that he had found the syringe in Housing Unit 2A, Cell D-114.  *Doc. 1* at 5.  At the time of the room search, however, Mr. Gallegos was housed in unit 2*B*, D-114.  *Id*.  Petitioner made this argument during the disciplinary hearing (*Doc. 13*, Exh. C), and again in his state habeas petition (*Doc. 13*, Exh. E).  The Hearing Officer noted that the correct housing number was indicated at the top of the report, and found that the "2A" language in the body of the report was merely a typographical error.  *Doc. 13*, Exh. C.  In dismissing the state habeas petition, the state court recounted the above history and noted that Petitioner failed to raise "any facts that show that the discrepancy was not a typographical error."  *Doc. 13*, Exh. F.  This Court finds that the state court's denial was reasonable because, despite the discrepancy in the disciplinary report, the disciplinary conviction was based on "some evidence."

New Mexico inmates possess a liberty interest in earned credits, *see Brooks v. Shanks*, 118 N.M. 716, 717 (N.M., 1994), and are entitled to due process protection prior to the loss of those credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (U.S. 1974). In addition to certain procedural requirements, discussed below, "some evidence" must support the conclusion of the administrative tribunal to satisfy the requirements of due process.  *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*  472 U.S.

445, 455 (1985).  "Ascertaining whether this standard is satisfied does not require

examination of the entire record, independent assessment of the credibility of witnesses,

or weighing of the evidence. Instead, the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary

board."  *Id*. at 455-56.

In *Hill*, a prison guard found an inmate who, apparently, had just been assaulted.

He also witnessed three other inmates running away from the scene.  Although there

was no direct evidence identifying any one inmate as the assailant, the Supreme Court

held that this evidence, "meager" though it may be, was sufficient to find each fleeing

inmate guilty of assault in the disciplinary tribunal without violating their due process

rights.  *Id.* at 456-57.

In the case at bar, the evidence indicating Petitioner's guilt is less meager.  He

does not deny that at the time of the search he was housed in Unit 2-B, Cell D-114,

which is the location of the search indicated at the top of the disciplinary report.

Although the body of that report indicates that the location of the search was in Unit

2A, cell D-114, it also goes on to say: "assigned to inmate Gallegos."  Moreover, Sgt.

Saenz must have testified that the unit he, in fact, did search was 2B because the

Hearing Officer cited Sgt. Saenz's "eyewitness/observation" that the syringe was found

in unit 2B when explaining what evidence led to his conclusion that Petitioner was

guilty of the charge. *Doc. 13*, Exh. C. Clearly, Defendants met the "some evidence" standard put forward in *Hill*, and the state court reasonably applied that standard.

The Hearing Officer also cited "Photocopies of the evidence and chain of custody" as reasons for his decision. *Doc. 13*, Exh C. The photocopies included pictures of the syringe and the cell. *Doc. 13*, Exh. B. Petitioner argues that the evidence was insufficient because the picture of the cell taken by Sgt. Saenz, though it noted the cell number as D-114, did not indicate whether the cell was in unit 2A or 2B. *Doc. 1* at 10. For the reasons explained above, however, the tribunal would have met its burden of "some evidence" without reliance on any photograph. The fact that this photo is only partially instructive, therefore, does not suggest constitutional error in the disciplinary board's findings.

Petitioner next asserts that this Court should apply the heightened preponderance of the evidence standard employed by the New Mexico Corrections Department in disciplinary proceedings instead of the "some evidence" standard espoused in *Superintendent*. *Doc. 1* at 6-7. Petitioner misunderstands the law. To begin, the *Superintendent* Court made clear in its reasoning that Due Process does not require a heightened standard:

> Prison disciplinary proceedings take place in a highly charged
> atmosphere, and prison administrators must often act swiftly on the basis
> of evidence that might be insufficient in less exigent circumstances. The
> fundamental fairness guaranteed by the Due Process Clause does not

> require courts to set aside decisions of prison administrators that have
> some basis in fact. Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence necessary to
> support such a conviction, nor any other standard greater than some
> evidence applies in this context.

*Superintendent*, 472 U.S. at 456 (internal citations omitted).  Moreover, prison regulations

are "primarily designed to guide correctional officials in the administration of a prison. .

. . [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472,

481-82 (1995).  Thus, "a failure to adhere to administrative regulations does not equate

to a constitutional violation." *Malik v. Kindt*, 1996 WL 41828, *2 (10th Cir. 1996) (quoting

*Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993)); *See also Harrison v. Williams*,

2009 WL 4016104, *4 (W.D.Okla. 2009).  "Although states may create liberty interests

protected by due process, 'these interests will be generally limited to freedom from

restraint which ... imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life.'" *Godlock v. Fatkin* 84 F. App'x. 24, 30 (10th Cir.

2003)(quoting *Sandin*, 515 U.S. at 484).  As in *Godlock*, "[t]his case does not present a

situation where 'a prison regulation or practice offends a fundamental constitutional

guarantee.'" *Godlock*, 84 F. App'x at 30 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Thus, the appropriate standard is the "some evidence" standard set out in

*Superintendent*, and for the reasons above explained, I find the state court correctly

applied that standard and came to a reasonable determination of the facts.

Consequently, I recommend dismissal of this claim on the merits.

Procedural Due Process Requirements for Revocation of Good Time Credits

Next, Petitioner asserts that the process given him before the revocation of his good time credits was insufficient. Specifically, he claims that a New Mexico Corrections Department regulation required any typos in the disciplinary report to be fixed during the investigatory stage prior to the hearing, and that the prison's failure to fix any typos at that time effectively waived the right of the Hearing Officer to consider any discrepancies as typographical errors. *Doc. 1* at 8-9. This Court finds Petitioner's interpretation of the regulation exceptionally unlikely, but even assuming that it is correct, it is not the type of deprivation afforded constitutional protection.

As stated above, prison regulations are "primarily designed to guide correctional officials in the administration of a prison. . . . [They are] not designed to confer rights on inmates." *Sandin,* 515 U.S. at 481-82; *see also Harrison*, 2009 WL 4016104 at* 4. Moreover, the Tenth Circuit has held as follows:

> It is well settled "that an inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.' " *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir.1991) (quoting *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)). The Supreme Court has held, however, that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). To meet the standards of due process in a disciplinary proceeding under *Wolff*, "the inmate must

-11-

> receive: (1) advance written notice of the disciplinary charges; (2) an
> opportunity, when consistent with institutional safety and correctional
> goals, to call witnesses and present documentary evidence in his defense;
> and (3) a written statement by the factfinder of the evidence relied on and
> the reasons for the disciplinary action." *Superintendent, Mass. Correctional
> Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

*Mitchell v. Maynard*, 80 F.3d 1433, 1444-45 (10th Cir. 1996). Even where petitioners assert other procedural violations, this Court's review "is limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary Committee's findings." *Id.* at 1445. I have already found that some evidence supported the Hearing Officer's findings and will now address the *Wolff* requirements.

Petitioner does not assert that any of his procedural rights under *Wolff* were violated, and the exhibits attached to Defendants' answer show that they were not. Mr. Gallegos was given advanced written notice of the disciplinary charges. *Doc. 13*, Exh. C. He was asked both during the investigation and at the hearing if he wanted to call any witnesses. *Id.* He declined. *Id.* Petitioner did not present documentary evidence at the hearing, but nothing in the record suggests he was disallowed from presenting such evidence. *See Doc. 13*, Exh. C. Petitioner was also offered an interpreter (which he declined), and his request to have inmate Frank Muniz assist him during the hearing was granted. *Id.* Finally, the Hearing Officer issued a decision that stated specific reasons for finding Petitioner guilty of the charge. *Id.* Thus, Petitioner was provided

-12-

adequate process.  Consequently, I recommend dismissal of this claim on the merits.

Petitioner next argues that the New Mexico legislature has vested in its inmates another procedural right that must be protected by the federal constitution.  *Doc. 1* at 13. N.M.S.A. 1978 §33-2-36 requires "final approval of the director of the adult institutions division of the corrections department or the director's designee" for any good time credit deductions greater than 90 days.  N.M.S.A. 1978 §33-2-36.  After the Hearing Officer issued a decision against the petitioner, the warden reviewed and approved the Hearing Officer's ruling.  *Doc. 13*, Exh. D.  Petitioner claims that final approval from the director was never obtained.  *Doc. 1* at 14.  The state did not address his claim in its answer, and the exhibits attached to the state's answer do not show any such final approval.  *See Doc. 13*.  For the purposes of this analysis, I will assume that no such final approval was obtained by the director or his designee.

Petitioner did not bring this claim in his state habeas petition.  *See Doc. 13*, Exh. E. Nevertheless, when a claim that is raised for the first time in federal habeas is "easily resolvable against the habeas petitioner," the court may deny the claim on the merits. *E.g., Lambrix v. Singletary,* 520 U.S. 518, 525 (1997); 28 U.S.C. § 2254(b)(2).  Whether this piece of legislation creates a constitutional right to process above and beyond the standard set out in *Wolff* is an issue that is easily resolvable against the petitioner.[5]

---

[5]  *See supra footnote* 1.

The Tenth Circuit has held that, even where petitioners assert other procedural violations, the Court's review of the revocation of good-time credit "is limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary Committee's findings." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)("Mr. Mitchell alleges many ways his due process rights were violated, including the reliability of the statement relied on to discipline him and the adequacy of the written findings.  Our review, however, is limited to whether the three steps . . .").  This holding suggests that all federally protected *procedural* rights for petitioners objecting to the revocation of good-time credit are contained within the requirements put forth in *Wolff*.  This rationale means that, even if a state fails to follow its own procedures, as long as the state process satisfies *Wolff*, there is no viable federal habeas claim.[6]

Other circuits have explicitly come to this conclusion including the Ninth Circuit Court of Appeals:

> Here, the protections provided to inmates by the Nevada Department of Prisons Code of Penal Discipline are more extensive than those mandated by *Wolff*.  We have never expressly considered whether the Due Process Clause requires the prison to comply with its own, more generous procedures once they are established.  The First Circuit in *Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir.1984), however, held that "if state procedures rise

---

[6]  As explained herein, Petitioner has not shown that any of his procedural rights under *Wolff* have been violated.

above the floor set by the due process clause, a state could fail to follow its
own procedures yet still provide sufficient process to survive
constitutional scrutiny."  The First Circuit's approach is consistent with
that of the Supreme Court in *Hewitt* and for this reason we adopt it today.
In light of *Rogers* and *Hewitt*, we need not consider whether the prison
complied with its own regulations. Walker's right to due process was
violated only if he was not provided with process sufficient to meet the
*Wolff* standard.

*Walker v. Sumner*  14 F.3d 1415, 1419 -20 (9th Cir. 1994) (some internal citations

omitted)(overruled on other grounds by *Sandin,* 515 U.S. 472 (1995) but cited as

authority on this issue again in *Murphy v. Thompson,* 15 F. App'x 417, 419 (9th Cir. 2001));

*see also Rogers v. Okin,* 738 F.2d 1, 7 -8 (1st Cir. 1984)("The determination that state

procedural rules create liberty interests under the due process clause does not answer

the question of what process is due under the Constitution.  Procedural minima

prescribed by the due process clause are not necessarily coextensive with procedures

prescribed by state law. ... [I]f state procedures rise above the floor set by the due

process clause, a state could fail to follow its own procedures yet still provide sufficient

process to survive constitutional scrutiny.").

        These authorities demonstrate that N.M.S.A. 1978 §33-2-36 does not create a

federal due process right to director approval of good-time credit revocation.

Therefore, because Gallegos' state procedure met the *Wolff* requirements, the state's

presumed failure to obtain that approval cannot be challenged in a federal habeas

petition.  Consequently, I recommend dismissal of this claim on the merits.

The Right to be Heard

Finally, Petitioner argues that his Due Process rights were violated because he did not have an impartial Hearing Officer.  *Doc. 1* at 11.  Mr. Gallegos claims that the Hearing Officer, Jose Armendariz, was not impartial because three days before Petitioner's hearing on the charge of syringe possession, Petitioner had another hearing in front of the same Hearing Officer on the charge of "Conspiracy to Introduce Contraband into a Prison."  *Doc. 1* at 12.  Petitioner asserts that, just prior to the start of the earlier hearing, the Hearing Officer was given a copy of the misconduct report for the syringe possession charge that was to be heard three days later.  *Id*.  After looking through the report, the Hearing Officer allegedly said to Petitioner, in Spanish, "with this one they screwed you."  *Id*.[7]  Petitioner asserts that this statement indicates the Hearing Officer had already decided the issue of the syringe petition before the time of the hearing, rendering him a biased fact-finder.  *Id*.

"An impartial decisionmaker is a fundamental requirement of due process that is 'fully applicable' in the prison context."  *Gwinn v. Awmiller*  354 F.3d 1211, 1220 (10th Cir. 2004) (quoting *Wolff*, 418 U.S. at 592 (Marshall, J., concurring)).  Due Process will be satisfied "as long as no member of the disciplinary board has been involved in the

---

[7] Petitioner alleges the Hearing Officer said, "Con este si te chingaron."  *Doc. 1* at 12.

investigation or prosecution of the particular case, or has had any other form of

personal involvement with the case."  *Wolff*, 418 U.S. at 592 (Marshall, J., concurring).

Furthermore,

> "because honesty and integrity are presumed on the part of a tribunal,
> there must be some substantial countervailing reason to conclude that a
> decisionmaker is actually biased with respect to factual issues being
> adjudicated." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th
> Cir.1998) (internal quotation marks omitted). " 'The mere exposure to
> evidence presented in nonadversary investigative procedures is
> insufficient in itself to impugn the fairness' of a later adversary hearing."
> *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir.1986) (quoting *Withrow v.
> Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Instead, "[d]ue
> process is violated only when 'the risk of unfairness is intolerably high'
> under the circumstances of a particular case." *Id.* (quoting *Withrow*, 421
> U.S. at 58, 95 S.Ct. 1456).

*Gwinn*, 354 F.3d at 1220.

Petitioner does not assert that Hearing Officer Armendariz was a part of the

investigation or prosecution of his syringe possession charge.  In fact, he states in his

Petition that those in charge of the prosecution and investigation were prison staff other

than Hearing Officer Armendariz: the Reporting Officer was Sgt. Saenz and the

Investigating Officer was Ricardo Salayandia.  *Doc. 1* at 8, 12.  Likewise, Petitioner has

not alleged that the Hearing Officer had some personal stake in the outcome of the case

or was personally involved in the incident or subsequent charge.  Also, the Hearing

Officer's exposure to the disciplinary report "is insufficient in itself to impugn the

fairness of a later adversary hearing." *Gwinn*, 354 F.3d at 1220 (internal citation

-17-

omitted).

The remaining question is whether the Hearing Officer's statement to the Petitioner after reviewing the report indicates an "intolerably high" risk of unfairness and thus constitutes a "substantial countervailing reason to conclude that a decision-maker is actually biased." *Id.* I find that it does not. The statement made by Hearing Officer Armendariz -- "With this one they screwed you" -- does not clearly indicate he had already decided the case before hearing the facts. In fact, it could just as easily be construed as skepticism of the legitimacy of the charge brought against Mr. Gallegos. Perhaps Mr. Gallegos was banking on that latter interpretation, because, despite the fact that he knew the Hearing Officer was the same man who three days prior had made that comment, Petitioner did not protest Mr. Armendariz' deciding his case. If he believed he had a biased judge, Mr. Gallegos could have objected at the hearing or prior to the hearing, or he could have explained in his petition(s) why he did not. He did none of the above, and this Court finds that Mr. Gallegos' behavior calls into doubt his own belief in the partiality of the Hearing Officer. The Hearing Officer is presumed to decide his cases with honesty and integrity, and I decline to find that his comment constituted an "intolerably high" risk of unfairness to Mr. Gallegos. *Id.* Consequently, I recommend dismissal of this claim on the merits.

Wherefore,

      **IT IS HEREBY RECOMMENDED THAT** Mr. Gallegos' petition be dismissed

with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

-19-